CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
MAR 15 2007
JOHN F. CORCORAN, CLERK
BY: /s/
 DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WYNN H. SHELDON, ) | |
|     Plaintiff, ) | Civil Action No. 7:06-cv-00049 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WARDEN BLEDSOE, et al., ) | By: Hon. Jackson L. Kiser |
|     Defendants. ) | Senior United States District Judge |

Plaintiff Wynn Sheldon, Federal Register Number 10336-052, filed a civil rights action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) with jurisdiction vested pursuant to 28 U.S.C. §1331. Plaintiff is currently incarcerated at the United States Penitentiary in Atwater, California. In his complaint, plaintiff alleges that, while he was an inmate at United States Penitentiary, Lee County ("USP Lee") in Jonesville, Virginia, he was subjected to the following alleged violations of his rights:

- he was placed in restraints in July 2004 as punishment and in violation of Bureau of Prisons ("BOP") policy;

- he was subjected to the use of force in July 2004;

- he was assaulted by USP Lee staff in December 2004;

- he was denied medical treatment following the assault in December 2004;

- upon his undertaking of a hunger strike, he was subjected to the loss of his property when he was removed to the Special Housing Unit ("SHU");

- while on a hunger strike, he was forced to sleep on the floor;

- while on a hunger strike, he was placed in a double cell instead of a single cell;

- while on a hunger strike, he was permitted to shower only once a week;

- while on a hunger strike, he was not provided with running water and was not

- permitted to brush his teeth;
- he was placed in the SHU for over two years;
- he was denied the use of the law library;
- he was denied the use of the administrative remedy program;
- he was not allowed to receive his magazine subscriptions while in the SHU;
- he was not permitted to flush his own toilet;
- he was subjected to the lights being left on in his cell for long periods of time;
- he was force-fed without a court order;
- he was force-fed by medical staff other than a physician;
- he was denied the right to contact a lawyer;
- he was denied access to the courts;
- he was assaulted by another inmate at USP Lee;
- and that staff failed to protect him from that assault.

Plaintiff names the following defendants in his lawsuit: Harley Lappin, Director of the BOP; K.M. White, Regional Director of the Mid-Atlantic Regional Office; Brian Bledsoe, a former Warden at USP Lee; Jerry Jones, a former Associate Warden at USP Lee; Larry Shults, a former Lieutenant at USP Lee; Daniel DeJesus, a former Clinical Director at USP Lee; Chuck Strickland and J.D. Hill, Associate Wardens at USP Lee; USP Lee Captain Charles Williams; USP Lee Lieutenants Ted Trees, Richard Pitt, and Edwin Allen; Gene Grapperhaus, a Counselor at USP Lee; and Debbie Duncan, Theresa Hornsby, and Phyllis Herrell, Registered Nurses employed at USP Lee. Plaintiff seeks monetary damages in excess of $1,000,000.00.

This matter is before the court on defendants' motion to dismiss or, in the alternative, motion

2

Case 7:06-cv-00049-JLK-mfu   Document 98   Filed 03/15/07   Page 2 of 11   Pageid#: 240

for summary judgment, where defendants argued solely that plaintiff had failed to exhaust his administrative remedies as to each of his claims.[1] In support of this argument, defendants submitted the affidavit of Sharon Wahl, the Legal Instruments Examiner who tracks administrative remedy data for USP Lee. See Defendants' Exhibit A. On June 7, 2006, the court notified plaintiff of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff that his failure to reply to the defendants' motion to dismiss would result in the case being dismissed for failure to prosecute. Additionally, the Roseboro notice advised the parties "that if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Civil Procedure."

Plaintiff filed a timely response to the defendants' motion. Accordingly, this matter is ripe for disposition.

After a thorough review of the record, I am convinced that plaintiff failed to exhaust all available administrative remedies regarding the claims raised in his complaint and that the defendants are entitled to judgment as a matter of law.

### I.

When a court grants a motion to dismiss after considering matters outside the pleadings, the court treats the motion to dismiss as a motion for summary judgment. Plante v. Shivar, 540 F.2d 1233, 1234 (4th Cir. 1976). As stated above, the court mailed Sheldon a Roseboro notice on June 7, 2006, specifically warning him that if I considered matters outside the pleadings, I might treat the

---

[1] Defendants expressly reserved the right to address plaintiff's arguments on the merits "[i]n the event it becomes necessary. . . ."

3

defendants' motion to dismiss as a motion for summary judgment, and that "[p]laintiff may wish to respond with counter-affidavits or other additional evidence. . . ." Thus, it is clear that plaintiff had sufficient notice that the motion to dismiss could be treated as one for summary judgment.

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242 (1986). When the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate; that is, the moving party is entitled to judgment as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the opposing party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

4

## II.

Defendants argue that plaintiff has failed to exhaust all available administrative remedies as to all of the claims he raised in the instant complaint. Although in his complaint and his response to defendants' motion Sheldon averred that he had attempted to exhaust his administrative remedies, he did not produce any evidence of having attempted to grieve, or appeal the denial of a grievance, regarding any of the issues he now raises. Nor has Sheldon provided a response to defendants' affidavit indicating that there is no record of plaintiff having filed or appealed any grievances related to the issues raised in this complaint. Moreover, although plaintiff maintains that grievance procedures were not available to him, defendants' evidence suggests that administrative remedies were available to him and that he took advantage of the grievance procedure on numerous occasions.

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") in an attempt to reduce the number of frivolous civil rights cases filed by prisoners. In the PLRA, Congress amended 42 U.S.C. § 1997e, the provision relating to prisoners' exhaustion of administrative remedies. As amended, that section requires that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2000). By the plain language of the statute, exhaustion of administrative remedies is a precondition to the <u>filing</u> of a prisoner's civil rights action; thus, a plaintiff who filed his lawsuit before exhausting administrative remedies cannot satisfy the §1997e(a) requirement, even if he later demonstrates that he filed a grievance and appealed it to the highest extent of the prison's grievance procedure <u>after</u> commencing the lawsuit. See <u>Dixon v. Page</u>, 291 F.3d 485 (7th Cir.

5

2002), citing Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999). The United States Supreme Court has held that § 1997e(a) applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that § 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those instances where an inmate claims that exhaustion would be futile or the remedy inadequate. Id. at 741, n.6. Of significance here, the inmate in Booth filed a grievance pursuant to the state prison's grievance procedure, but failed to appeal the denial to the intermediate or final appeal levels. Because the inmate failed to appeal the denial, the inmate was deemed to have failed to exhaust his administrative remedies. Id. at 735. Additionally, the Court in Booth held that even where inmates limited their "prayers for relief to money damages not offered through administrative grievance mechanisms . . . . Congress has mandated exhaustion clearly enough."[2] Id. at 741.

Pursuant to 28 C.F.R. § 542.10, et seq., the BOP has established an administrative remedy procedure through which an inmate may seek a formal review of an issue or complaint relating to his confinement. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. See 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the

---

[2] In his response in opposition to defendants' motion, plaintiff argues that a federal prisoner need not exhaust administrative remedies before bringing an action seeking monetary damages. Under the prevailing standard as set out in Booth, plaintiff's argument is without merit.

6

Regional Director within twenty calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, DC, using the appropriate forms. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. See id. An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels.[3] See 28 C.F.R. § 542.15(a).

Sheldon fails to adequately respond to defendants' review of his administrative remedy history, in the Declaration of Sharon Wahl, which shows that he sought administrative remedies on numerous occasions and that he failed to fully exhaust any of the claims in the instant complaint. See Defendants' Exhibit A. Although Sheldon summarily states in his complaint and his response in opposition to defendants' motion that he was denied the use of the administrative remedy program, he does not provide any detail, either in his complaint or his response in opposition to defendants' motion, as to how or when he was denied the use of the program. In his complaint, he states: "[I]n keeping with the spirit of the law, I have in facte [sic] followed the process of the astablished [sic] administration [sic] process when practable [sic]. The administration [sic] remedy process is repitive [sic] and redundant and gives no relief to inmates, how-ever [sic] I attempted to stay with-in [sic] the guidelines." The exhibits plaintiff submitted as evidence of exhaustion are not administrative remedies that pre-date the filing of the complaint, but are plaintiff's letters to various

---

[3] Several circuit courts of appeals have held that the failure to timely file an appeal with the General Counsel is a procedural default. See, e.g., Moscato v. B.O.P., 98 F.3d 757, 760 (3d Cir.1996) (a prisoner's "failure to satisfy the procedural rules of the Bureau's administrative process constitutes a procedural default").

7

prison officials, which are not on the proper forms as required by 28 C.F.R. § 542.14(a).[4]

Defendants' exhaustive review of plaintiff's administrative remedy history indicates that plaintiff had access to the administrative remedy process and availed himself of the process on numerous occasions. The only filings for administrative remedies filed by plaintiff that appear relevant to the instant case follow:

- Plaintiff filed an administrative remedy at the institutional level in December 2004, alleging the use of excessive force against him while he was housed in the SHU at USP Lee. The remedy was denied in December 2004. Sheldon filed the remedy with the Regional Office, and it was rejected. He re-filed it with the Regional Office, and it was denied on March 18, 2005. He failed to appeal the denial to the Central Office. Accordingly, he failed to exhaust his administrative remedies as to his claim that he was subjected to excessive force in December 2004.

- Plaintiff filed an administrative remedy at the institutional level in December 2005, complaining that he could not purchase stamps because his inmate account had been frozen and thus he was denied access to the courts. The remedy was denied, and plaintiff failed to appeal any higher. Accordingly, he failed to exhaust his administrative remedies as to the claim that he was denied access to the courts in December 2005.

- In January 2006, plaintiff filed an administrative remedy at the institutional level regarding the denial of magazines in the SHU. The remedy was denied, and he failed

---

[4] Plaintiff supplemented his response in opposition to defendants' motion with evidence that includes a grievance filed after the commencement of this lawsuit.

to appeal any higher. Accordingly, he failed to exhaust his administrative remedies as to this claim.

Defendants' review shows that Sheldon has pursued administrative procedures on at least eight other occasions, regarding either claims not relevant to the claims in this complaint[5] or claims that arose after the filing of this complaint. On all but one of those occasions, plaintiff failed to exhaust his administrative remedies.

Defendants' review of plaintiff's administrative remedy history also indicates that plaintiff had access to and understood the administrative remedy procedures. Furthermore, it shows that plaintiff failed to fully exhaust any of the claims presently before the court. Of the numerous claims that can be distilled from plaintiff's complaint, plaintiff filed administrative remedies relevant to only three of his allegations. As indicated above, those administrative remedies are relevant only to his claim of excessive force in the SHU in December 2004, his allegation that he was being denied access to the courts, and his allegation concerning magazines in the SHU.[6] And, as indicated above, plaintiff failed to fully exhaust the administrative remedy procedures available to him in those instances.[7]

Sheldon argues that his failure to exhaust should be excused because he was denied the use

---

[5] Several of these were appeals of disciplinary actions, which are initiated at the Regional Office.

[6] Significantly, the administrative remedy regarding magazines in the SHU was denied on the institutional level on January 27, 2006, although the instant suit was filed on January 18, 2006.

[7] I note that the Supreme Court has held that, in the context of § 1997e(a), administrative law requires proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. See, e.g., Woodford v. Ngo, 126 S.Ct. 2378, 2385 (2006) (reasoning, id. at 2387, that "[t]he text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion. Section 1997e(a) refers to 'such administrative remedies as are available,' and thus points to the doctrine of exhaustion in administrative law").

of the administrative remedy procedures; however, Sheldon's administrative remedy history indicates that he had access to the administrative remedy program.[8] In fact, he complains that the procedures are repetitive, redundant, and provide no relief to inmates. Sheldon's vague and conclusory statements that he was denied the use of the administrative remedy procedures cannot withstand defendants' specific evidence about his administrative remedy history on issues unrelated to this case. Their undisputed evidence clearly indicates that he did, in fact, have extensive access to the administrative remedy program and knew how to use it. Sheldon alleges no facts and offers no documentation on which a jury could find in his favor on the issue of whether or not he exhausted administrative remedies as to any of his claims. Furthermore, his assertion that he should be excused from the exhaustion requirement because he finds the grievance procedures to be repetitive, redundant, and useless in providing relief to inmates has been soundly rejected by the United States Supreme Court. I find no genuine issue of material fact in dispute as to whether Sheldon failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) and so determine that defendants are entitled to judgment as a matter of law on their defense of nonexhaustion. I will grant defendants' motion for summary judgment and dismiss Sheldon's claims without prejudice.

### III

Based on the foregoing, I find that Sheldon has failed to exhaust his administrative remedies

---

[8] Plaintiff admits that, when he wrote letters directly to prison officials, attempting to bypass the administrative remedy system, the letters were returned to him with instructions to employ the administrative remedy program to address his complaints. Additionally, plaintiff's own evidence indicates that, in a December 27, 2004, response to plaintiff's "Inmate Request to Staff Member," regarding plaintiff's claim that prison staff lost his personal property in the SHU, Associate Warden Jones informed plaintiff how to proceed with a claim for damages under the Federal Tort Claims Act.

as to all claims raised in the complaint.[9] Accordingly, I find that defendants are entitled to judgment as a matter of law and will grant their motion for summary judgment.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

**ENTER**: This 15th of March, 2007.

Senior United States District Judge

---

[9] Inasmuch as plaintiff has failed to exhaust the available administrative remedies, which might toll the running of the statute of limitations, plaintiff is advised that he likely is procedurally barred from pursuing these claims any further because they are untimely. As with §1983 actions, Bivens actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. §8.01-243(a). Under these principles, a plaintiff bringing a civil rights action under §1983 or Bivens in Virginia must do so within two years from the time when his action accrues. Id.

11